UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| Plaintiff | § | |
| | § | |
| v. | § | NO. 25-MJ-2401-LE |
| | § | |
| ADELY VANESSA DE LA | § | |
| CRUZ-ALVAREZ | § | |
| Defendant | § | |

## DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL

ADELY VANESSA DE LA CRUZ-ALVAREZ ("Ms. De La Cruz"), pursuant to Federal Rule of Criminal Procedure 29(a), moves that a judgment of acquittal enter as to Counts Two and Three of the Misdemeanor Information charging her with Willfully Violating a Defense Property Security Regulation in violation of 50 U.S.C. § 797 and Entering Military Property in violation of 18 U.S.C. §1382. Doc. No. 8.

**I.    BACKGROUND**

On May 16, 2025, the Government filed its Misdemeanor Information alleging violations in three counts. (Doc. No. 6.). Count One alleges Illegal Entry in violation of 8 U.S.C. §1325(a)(1). Count Two alleges Willfully Violating a Defense Property Security Regulation in violation of 20 U.S.C. § 797. Count Three alleges Entering Military Property in violation of 18 U.S.C. §1382.

On May 28, 2025, this Court scheduled a trial on June 3, 2025. (Doc. No. 16.). On June 2, this Court orally granted a defense request (Doc. No. 23) and ordered that all counts of the Misdemeanor Information be tried by jury. At the time of this filing, the Government's case-in-chief has been completed and the Government rested. As such, a Motion for Judgment of Acquittal pursuant to Federal Rule of Criminal Procedure 29(a) is ripe.

1

## II.  ARGUMENT

The Court should enter a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(a) because the evidence presented at trial as to Count Two, Willfully Violating a Defense Property Security Regulation, and Count Three, Entering Military Property, is insufficient to sustain convictions.

### A.  Applicable Legal Standards

Rule 29(a) provides "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."  "A motion for judgment of acquittal challenges the sufficiency of the evidence to convict." *United States v. Medina*, 161 F.3d 867, 872 (5th Cir.1998). "When reviewing the sufficiency of the evidence, [a trial court] views all evidence, whether circumstantial or direct, in the light most favorable to the Government with all reasonable inferences to be made in support of the jury's verdict."  *United States v. Terrell*, 700 F.3d 755, 760 (5th Cir. 2012).

### B.  Evidence fails to show that Ms. De La Cruz's actions constituted a violation of 18 U.S.C. § 1382

Section 1382 makes it a petty misdemeanor to "within the jurisdiction of the United States, go[] upon any military, naval, or Coast Guard reservation, post, fort, arsenal, yard, station, or installation, for any purpose prohibited by law or lawful regulation." *Id.* The Information alleges that Ms. De La Cruz committed such an offense by "enter[ing]…the National Defense Area created by lawful authority on April 30, 2025, . . . and said entry was for any purpose prohibited by law or lawful regulation, specifically 8 U.S.C. § 1325(a)(1)." (Doc. No. 6).

A violation of § 1382, as relevant to the present case, requires proof that a defendant (1) knowingly 'goes upon' a military reservation; and (2) does so for any unlawful purpose. *See United*

*States v. Parrilla Bonilla*, 648 F.2d 1373, 1377 (1st Cir.1981) ("it must be shown that the defendant had knowledge or notice that such entry was, in fact, prohibited"); *United States v. Hernandez-Garcia,* 25-mj-1481-GBW, 2025 WL 1413723, at *5 (D.N.M May 14, 2025).

As to the first element, the evidence presented does not approach proof beyond reasonable doubt that Ms. De La Cruz had knowledge that the border area she entered was a military reservation.[1] This Court heard repeated testimony regarding sporadic signage inconsistent with clear notice to anyone passing through the area. The placement and size of these 'notices' do not insure that one walking anywhere in this zone would recognize the same, regardless of the specific terrain on which the person stands, vegetation, physical proportion or body position of the individual, and hour of the day. The zone itself is otherwise an unremarkable tract of land that would offer no notice, through physical structure or specific characteristics, that it is other than a parcel of land on the border. In trying to prove this land is unquestionably defined, the Government has proved it is, quite to the contrary, unremarkable and as such incapable of providing the requisite notice to a defendant.

Specifically, in this case, there has been testimony by various witnesses as to the signage in the area where Ms. De La Cruz was arrested. Border Patrol Agent Raymundo Torres testified extensively about the area in which Ms. De La Cruz was ultimately arrested. This officer showed the jury and the Court in detail the NDA area, defining its boundaries and discussing where groups

---

[1] The Supreme Court interpreted section 1328 as generally applying "to places with a defined boundary under the command of a military officer." *United States v. Apel*, 571 U.S. 359, 369 (2014). In terms of Congressional intent, section 1382 reflects the "general purpose of protect[ing] the property of the Government so far as it relates to the national defense." *United States v. Albertini*, 472 U.S. 675, 681–82 (1985). In assessing whether the present, ill-defined "military zone" qualified as the type of property addressed at all by section 1382 or *Apel*, one may readily question if a zone created solely to allow the federal military to engage in civilian immigration enforcement activities or contrive otherwise unavailable charges for immigration violations is, in fact, a military zone as this unprecedented designation has nothing to do with protecting damage to the zone itself. It is unclear how the designation of this zone squares with Posse Comitatus, a long-standing law "designed to limit the direct active use of federal troops by civil law enforcement officers" to enforce the laws of this nation." *United States v. Hartley*, 796 F.2d 112, 114 (5th Cir. 1986)

of migrants are known to congregate. Nowhere in Agent Torres' testimony is there any indication that there is signage at the southernmost point of the NDA, the distance to the border fence, and was unable to even place Ms. De La Cruz within this "group" that Agent Torres testified about.

Agent Torres additionally testified that the pictures he showed the jury were taken the Friday or Saturday (depending on the exhibit) prior to the day of trial. He admitted that he was unable to testify that those signs existed or were posted in the areas depicted in the exhibits on May 12, the day of Ms. De La Cruz's apprehension.

Next the Government calls Demetria Walker from the International Boundary and Water Commission. Ms. Walker testified that she has no personal knowledge about the apprehension of Ms. De La Cruz. Further, Ms. Walker testified that she could not cannot confirm whether there is signage in the area where Ms. De La Cruz was arrested, nor whether there was signage on May 12. Importantly, Ms. Walker was unable to testify that any public disclosure of the transfer of control of this area in question was ever made. The best Ms. Walker was able to affirm is that at some point she was told that the ARMY may have put a notice to this effect on its own internal website. No testimony was elicited from the Government that Ms. De La Cruz knew or even should have known that the area in question had been transferred to Ft. Bliss.

The Government's third witness, Agent Contreras, the agent who apprehended Ms. De La Cruz, testified the jury and the Court the area, using Government's Exhibit 7, the area where Ms. De La Cruz was encountered. Admittedly, there is a warning sign in that photograph. That said, this testimony underscores in multiple problems with the Government's case. First, the sign in Government's Exhibit 7 is not even purportedly near where Ms. De La Cruz was apprehended by Agent Contreras. Noting that even if Ms. De La Cruz had been apprehended near that sign, she would have, according to the Government's theory, already committed the offense for at a

minimum of 50 yards of walking prior to even arriving at any such signage. Additionally, there was zero testimony that Ms. De La Cruz (1) ever saw any such signage, (2) knew that the area was designated as any kind of a military zone, (3) had any intention, willfully or otherwise, to enter upon a military zone within the United States.

If any Government witness were to testify that Ms. De La Cruz had seen any signage warning her that she had entered upon a military zone, it would have been Agent Contreras. To the contrary, Agent Contreras testified that there is no signage at the southernmost part of the U.S./Mexico border, the beginning of the NDA. Agent Contreras also questioned Ms. De La Cruz, and never elicited any statements that Ms. De La Cruz knew or even should have known that she was even in the United States of America, let alone a military zone. To the contrary, in Agent Contreras' experience tells him that often times migrants do not even realize they have entered the United States until they reach the border wall.

In the light most favorable to the Government, the best Agent Contreras was able to do testify about signage is when, on redirect examination, he said there was, to his recollection, a sign on May 12, east of the gate. However, he then, while answering Mr. Countryman's questions, admitted that Ms. De La Cruz was apprehended just *west* of the gate. This testimony further demonstrates the Government's failure to show that Ms. De La Cruz was, in any way, aware of the signage in this area. To that end on re-cross examination, Agent Contreras admitted that he did not even advise Ms. De La Cruz that she was in a National Defense Area—nor was he able to, during that questioning, remember whether there actually *was* a sign—as shown in Government's Exhibit 7.

As such, the Government utterly fails in proving knowledge beyond a reasonable doubt.

The Government further failed to offer proof as to Ms. De La Cruz's specific circumstances that would appear to be essential to its case. For example, the relative distance to angle of the closest sign according to her path in this case. Moreover, the Government offers no evidence as to Ms. De La Cruz's language skills, her literacy, her actual knowledge elicited through interrogation, and her denial of knowledge if asked. On these specific matters, the Government offers no details.

As for the second element, proof of an unlawful purpose, the Government, through its pleading, asks this Court to consider the entry was for the unlawful purpose of violating 8 U.S.C. § 1325(a)(1). This Court has heard testimony of the international line with Mexico to the south, followed by the border fence to the north, followed by the military zone to the north.

Section 1325(a)(1) provides as follows: "Any alien who (1) enters or attempts to enter the United States at any time or place other than as designated by immigration officers . . . shall . . . be fined under Title 18 or imprisoned not more than 6 months, or both . . . ." The law encompasses "attempts to enter," thus the unlawful purpose of violating the identified statute is satisfied prior to the actual entry. "It is . . . clear . . . that a defendant may not be convicted of both the attempt and the completed crime, because all the elements of the attempt are included in the completed offense and a dual conviction would amount to double jeopardy." *United States v. Rust*, 650 F.2d 927, 928 (8th Cir.1981). The Government cannot establish the existence of defense property in Mexico, thus the placement of this zone thwarts the use of section 1325(a)(1). Simply stated, one cannot enter the territory with the 'purpose' of violating the statute when he or she is already in violation of the statute and cannot be charged multiple times for the same offense.[2]

---

[2] A prosecutor is routinely asked to elect a theory during guilty plea proceedings in illegal re-entry cases, choosing between "attempted to enter", 'entered' or was "found in" the United States. Section 1382 asks only whether the entry serves the purpose of an unlawful act. The relevant law asks only if the entry was for an unlawful purpose, signifying an offense arising on the military property. In the present case, the act of entry does not give rise to a

6

As Count Three cannot be established beyond a reasonable doubt, a judgment of acquittal should be granted.

C. **Evidence adduced fails to show that Ms. De La Cruz's actions constituted a violation of 50 U.S.C. § 797.**

The Government falls well short of establishing the elements of Count Two beyond a reasonable doubt. By reference, the above summary of testimony is incorporated in the argument for this count as well.

Section 797 prohibits the "willful" violation of any defense property security regulation. The information alleges that Ms. De La Cruz "*willfully* violated a defense property security regulation . . . by accessing the designated Restricted Area which contained posted notice prohibiting unauthorized access." (Doc. No. 6)(emphasis added). To convict a defendant for "willfully" committing an offense, the Government must show that not only did a defendant have "knowledge of the facts that constitute the offense" but also that "he acted with knowledge that his conduct was unlawful." *Bryan v. United States*, 524 U.S. 184, 193 (1998); *see Hernandez-Garcia,* 2025 WL 1413723 at *9. However, the evidence presented at trial echoes the concerns set forth above for section 1382, compounded by a failure to satisfy the express mandate of 797(b) that the notices "shall be posted in conspicuous and appropriate place". The evidence offered regarding notices scattered over wide terrain fails to establish that Ms. De La Cruz possessed either (1) the requisite knowledge of the regulation (2) willful violation of the regulation by accessing the area knowing knowledge that doing so violated the regulation.[3]

---

violation but rather involves one already guilty of the immigration violation. The law does not invite liability based on a pre-existing violation, as such cannot reflect a purpose at the time of entry.

[3] Notice of the security regulation is crucial to any prosecution under § 797, as evidenced by the fact that Congress wrote a notice requirement into the statute, requiring that "[a]ny regulation or order . . . shall be posted in conspicuous and appropriate places." 50 U.S.C. § 797(b); *see also United States v. Floyd*, 477 F.2d 217, 222 n.2 (10th Cir. 1973) ("In general, to have legal effect . . . any directive or regulation applying to the protection of USAF physical resources should . . . [b]e posted in a conspicuous and appropriate place.").

As a separate concern, the Government cannot establish that the "Restricted Area" qualifies as a defense property according to the statute.

Statutory construction begins with plain meaning of the statute. *United States v. Moore*, 71 F.4th 392, 395 (5th Cir. 2023). "[W]ords are given their ordinary, plain meanings, and language must be enforced unless ambiguous." *Id.* "But [t]ext should never be divorced from context." *Id.* (cleaned up). "[C]'ontext can mean both the immediate clause and the broader context of the statute as a whole." *Id.* (cleaned up). "If applicable, canons of construction can be used to resolve remaining ambiguity." Id. "In very rare cases, we may look to legislative history, but [o]nly after application of the principles of statutory construction, including the canons of construction." *Id.* (cleaned up). "If these tools can't get us out of stalemate, ties go to the runner—the rule of lenity functions to resolve intractable ambiguity in a criminal defendant's favor." *Id.* at 396.

With these principles in mind, this Court is asked to consider whether § 797 encompasses the alleged criminal conduct. The prohibitions of § 797 apply to "[w]hoever willfully violates any defense property security regulation shall be fined under Title 18 or imprisoned not more than one year, or both." *Id.* § 797(a)(1). "Defense property" is defined as "covered property subject to the jurisdiction, administration, or in the custody of the Department of Defense, any Department or agency of which that Department consists, or any officer or employee of that Department or agency." *Id.* § 797(a)(4)(A). "Covered property" is defined as "aircraft, airports, airport facilities, vessels, harbors, ports, piers, water-front facilities, bases, forts, posts, laboratories, stations, vehicles, equipment, explosives, or other property or places." *Id.* § 797(a)(4)(D). In the present case, the question is whether an unremarkable tract of land on the border lacking genuine physical boundaries obvious to an individual approaching the same qualifies as "covered property." It does not.

The delineated military property identified as "covered property," whether mobile or fixed property, possesses clear physical boundaries.  An aircraft or ship has a fixed structure.  A building has walls. A military base has a fence and a gate.  None of the listed items include an arbitrary strip of land identifiable only by terrestrial navigation systems.  A tract of land arbitrarily ceded to the Department of Defense is neither found within this list nor comparable to any item on the list.  If these border tracts of land qualify as "covered property," then it can only be through the catch-all provision of "other property or places."

What precisely qualifies as "other property or places" is defined by the descriptive list itself. When a statute contains a list, each word in that list presumptively has a "similar" meaning. *See, e.g.*, *Gustafson v. Alloyd Co.*, 513 U.S. 561, 576 (1995). General words following a list of specific words should usually be read considering those specific words to mean something "similar." *See, e.g.*, *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 163 (2012). Applying these basic canons to § 797(a)(4)(D)'s list of nouns, the term "other property or places" should refer to something possessing obvious boundaries, such as physical structure or fortified enclosure.  The statute does not contemplate an arbitrary 'zone' created by Executive Order lacking any obvious boundaries, indistinguishable from any other parcel of land on the planet but for this description on paper.

If the clause "other property or places" is read broadly to include anything under the custody of control of the Department of Defense, as would be required in the present case to make the statute encompass the alleged offense, then the descriptive list itself would be rendered surplusage. Such an interpretation would run afoul of the precept that "a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (cleaned up).  If Congress

intended such an inclusive result, then it would presumably have defined the reach of the statute as encompassing all property or places without regard to the list. It did not do so.

The defense zone established in this case does not fit § 797's definition of "covered property," and as such the offense does not involve "defense property" as required for the present prosecution. Assuming, arguendo, the Government could prove the heightened mens rea, which it has not, it has failed to establish the existence of a "defense area" as required by statute.

This Court is thus asked to grant a judgment of acquittal as to Count Two.

### III.  CONCLUSION

For the foregoing reasons, Ms. De La Cruz requests that the Court grant a judgment of acquittal as to Counts Two and Three.

Respectfully Submitted,

Maureen Scott Franco
Federal Public Defender


          /S/
SHANE MCMAHON
Assistant Federal Public Defender
Western District of Texas
Richard C. White Federal Building
700 E. San Antonio, D-401
El Paso, Texas  79901
(915) 534-6525
*Attorney for Defendant*

### CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2025, I electronically filed the foregoing with the Clerk of Courts using the CM/ECF system which will send notification of such filing to Office of the U.S. Attorney, Richard C. White Building, 700 E. San Antonio, Suite 200, El Paso, TX 79901.

/S/

SHANE MCMAHON
*Attorney for Defendant*

Case 3:25-mj-02401-LE   Document 40   Filed 06/04/25   Page 11 of 11

SHANE MCMAHON
*Attorney for Defendant*